Slip Op. 19-160

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JACOBI CARBONS AB AND JACOBI CARBONS, INC., | |
| Plaintiffs, | |
| and, | |
| NINGXIA HUAHUI ACTIVATED CARBON CO., LTD., ET AL., | |
| Plaintiff-Intervenors, | Before: Mark A. Barnett, Judge Consol. Court No. 16-00185 |
| v. | |
| UNITED STATES, | |
| Defendant, | |
| and, | |
| CALGON CARBON CORPORATION AND CABOT NORIT AMERICAS, INC., | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[The U.S. Department of Commerce's third remand results are remanded with respect to the agency's surrogate value selection for the value of carbonized material.]

Dated: December 17, 2019

Daniel L. Porter and Tung A. Nguyen, Curtis, Mallet-Prevost, Colt & Mosle LLP, of Washington, DC, for Plaintiffs Jacobi Carbons AB and Jacobi Carbons, Inc.

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, DeKieffer & Horgan, PLLC, of Washington, DC, for Plaintiff-Intervenors Carbon Activated Corporation, Ningxia Mineral and Chemical Ltd., Shanxi DMD Corporation, Shanxi Industry Technology Trading Co., Ltd., Shanxi Sincere Industrial Co., Ltd., Tianjin Channel Filters Co. Ltd., and Tianjin Maijin Industries Co., Ltd.

<u>Mollie L. Finnan</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With her on the brief were <u>Joseph H. Hunt</u>, Assistant Attorney General, <u>Jeanne E. Davidson</u>, Director, and <u>Claudia Burke</u>, Assistant Director.  Of counsel on the brief was <u>Emma T. Hunter</u>, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

<u>David A. Hartquist</u>, <u>R. Alan Luberda</u>, <u>John M. Herrmann</u>, and <u>Melissa M. Brewer</u>, Kelley Drye & Warren LLP, of Washington, DC, for Defendant-Intervenors Calgon Carbon Corporation and Cabot Norit Americas, Inc.

Barnett, Judge:  This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") third redetermination upon remand in this case.  *See* Final Results of Redetermination Pursuant to Court Remand ("Third Remand Redetermination"), ECF No. 139-1.

Plaintiffs Jacobi Carbons AB and Jacobi Carbons, Inc. (together, "Jacobi") and Plaintiff-Intervenors[1] (collectively, with Jacobi, "Plaintiffs") challenged several aspects of Commerce's final results in the eighth administrative review of the antidumping duty order on certain activated carbon from the People's Republic of China ("PRC" or "China").  *See Certain Activated Carbon From the People's Republic of China,* 81 Fed.

---

[1] Plaintiff-Intervenors include Carbon Activated Corporation, Ningxia Mineral and Chemical Limited, Shanxi DMD Corporation, Shanxi Industry Technology Trading Co., Ltd., Shanxi Sincere Industrial Co., Ltd., Tianjin Channel Filters Co., Ltd., and Tianjin Maijin Industries Co., Ltd. (collectively, "CAC"); Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd., Beijing Pacific Activated Carbon Products Co., Ltd., and Datong Municipal Yunguang Activated Carbon Co., Ltd (collectively, "Cherishmet"); Ningxia Huahui Activated Carbon Co., Ltd. ("NXHH"); and M.L. Ball Co., Ltd., and Jilin Bright Future Chemicals Company, Ltd. (together, "M.L. Ball").  The court consolidated cases filed by CAC, Cherishmet, and M.L. Ball under lead Court No. 16-00185, filed by Jacobi.  *See* Order (Nov. 3, 2016), ECF No. 42.  Those parties, along with NXHH, had also intervened in this action.  *See* Order (Oct. 7, 2016), ECF No. 17; Order (Oct. 12, 2016), ECF No. 22; Order (Oct. 20, 2016), ECF No. 36; Order (Oct. 20, 2016), ECF No. 40.

Reg. 62,088 (Dep't of Commerce Sept. 8, 2016) (final results of antidumping duty

admin. review; 2014-2015) ("*Final Results*"), ECF No. 44-4,[2] and accompanying Issues

and Decision Mem., A-570-904 (Aug. 31, 2016), ECF No. 44-5.

On June 20, 2017, the court granted Commerce's request for a remand to clarify

or reconsider its findings regarding economic comparability and Thailand's status as a

significant producer of comparable merchandise based on its export quantity.  *See*

Order (June 20, 2017), ECF No. 77.  On September 5, 2017, Commerce issued its first

remand redetermination wherein the agency elaborated on its methodology for

determining which countries are at the same level of economic development as the

PRC and made its significant producer determination based on evidence of domestic

production rather than exports.  *See* Final Results of Redetermination Pursuant to Court

Order (Sept. 5, 2017), ECF No. 78-1.  On April 19, 2018, the court sustained

Commerce's economic comparability determination but remanded the agency's

determination that Thailand is a significant producer of comparable merchandise.  *See*

---

[2] The administrative record filed in connection with the *Final Results* is divided into a Public Administrative Record ("PR"), ECF No. 44-3, and a Confidential Administrative Record ("CR"), ECF No. 44-2.  The administrative record associated with the Third Remand Redetermination is contained in a Public Remand Record, ECF No. 140-2, and a Confidential Remand Record, ECF No. 140-3.  Parties submitted joint appendices containing record documents cited in their remand briefs.  *See* J.A. to Parties' Comments on Third Remand Redetermination ("3rd PJA"), ECF No. 150; Confidential J.A. to Parties' Comments on *Third* Remand Redetermination , ECF No. 151.  These appendices supplement the documents previously provided in connection with the agency's previous determinations in this case.  *See* J.A. to Parties' Comments on Second Remand Redetermination ("2nd PJA"), ECF No. 133; Confidential Suppl. App. to Comments on Second Remand Redetermination, ECF No. 135; Public J.A. ("1st PJA"), ECF No. 92; Confidential J.A., ECF No. 91.

*Jacobi Carbons AB v. United States* ("*Jacobi (AR8) I*"), 42 CIT ___, 313 F. Supp. 3d

1344 (2018).[3]

On October 24, 2018, Commerce filed the results of its second remand

redetermination.  *See* Final Results of Redetermination Pursuant to Court Remand,

ECF No. 124-1.  Therein, relevant to this discussion, Commerce again found that

Thailand is a significant producer of comparable merchandise, *see id.* at 4–7; and

further explained its selection of Thai surrogate values for carbonized material and

hydrochloric acid, *see id.* at 8–15.  On March 5, 2019, the court sustained some aspects

of Commerce's determination but remanded Commerce's selection of Thailand as the

primary surrogate country based on the lack of substantial evidence supporting

Commerce's determination that Thailand was a significant producer of comparable

merchandise.  *See Jacobi (AR8) II*, 365 F. Supp. 3d at 1351–53, 1358–63.  The court

instructed Commerce to select a country that meets that statutory criteria for a surrogate

country (*i.e.*, that is economically comparable to the subject nonmarket economy

country and a significant producer of comparable merchandise pursuant to 19 U.S.C. §

1677b(c)(4), and, for those for inputs that Commerce valued using Thai data, to revisit

its selection of surrogate values.  *Id*. at 1353.

---

[3] *Jacobi (AR8) I* and *Jacobi Carbons AB v. United States* ("*Jacobi (AR8) II*"), 43 CIT
___, 365 F. Supp. 3d 1344 (2019) present background information on this case;
familiarity with these cases is presumed.

On June 17, 2019, Commerce filed the remand results at issue.  *See* Third

Remand Redetermination.  Therein, under respectful protest,[4] Commerce determined

that the Philippines and Malaysia were at a comparable level of economic development

as China and significant producers of comparable merchandise.  *Id.* at 2, 5–10 & n.7

(citation omitted).  Commerce concluded that both countries were potential primary

surrogate countries for valuing Jacobi's factors of production ("FOP") for this review.

*See id.* at 10.  Commerce selected Malaysia as the primary surrogate country and used

Malaysian data to value the factors of production with the exceptions of the surrogate

values for financial ratios and carbonized material, for which Commerce selected

Philippine data.  *See id.* at 12, 15–16, 23–24.

Defendant-Intervenors Calgon Carbon Corporation and Cabot Norit Americas,

Inc. (together, "Calgon Carbon") filed comments opposing the Third Remand

Redetermination with respect to Commerce's selection of the Philippine *Cocommunity*

data as the surrogate value for carbonized material.  Def.-Ints.' Comments in Opp'n to

Third Remand Redetermination ("Def.-Ints.' Opp'n Cmts."), ECF No. 141.  Plaintiffs filed

comments opposing Commerce's selection of the Malaysian data as surrogate values

for coal tar and bituminous coal.  Jacobi's Comments on Commerce's Third Remand

Redetermination ("Jacobi's Opp'n Cmts."), ECF No. 142; Consolidated Pls. Carbon

Activated Corporation, Ningxia Mineral and Chemical Limited, Shanxi DMD Corporation,

Shanxi Industry Technology Trading Co., Ltd., Shanxi Sincere Industrial Co., Ltd.,

---

[4] By making the determination under protest, Commerce preserves its right to appeal.
See *Meridian Prods. v. United States*, 890 F.3d 1272, 1276 n.3 (Fed. Cir. 2018) (citing
*Viraj Grp., Ltd. v. United States*, 343 F.3d 1371, 1376 (Fed. Cir. 2003)).

Tianjin Channel Filters Co., Ltd., and Tianjin Maijin Industries Co., Ltd., Comments in Opp'n to U.S. Dep't Of Commerce's Third Remand Redetermination ("CAC's Opp'n Cmts."), ECF No. 143.

Plaintiffs also filed comments in support of Commerce's selection of the *Cocommunity* data to value carbonized material.  Jacobi's Comments in Supp. of Certain Aspect of Commerce's Third Remand Determination ("Jacobi's Supp. Cmts."), ECF No. 145; Consolidated Pls. Carbon Activated Corporation, Ningxia Mineral and Chemical Limited, Shanxi DMD Corporation, Shanxi Industry Technology Trading Co., Ltd., Shanxi Sincere Industrial Co., Ltd., Tianjin Channel Filters Co., Ltd., and Tianjin Maijin Industries Co., Ltd., Resp. Comments in Supp. of U.S. Dep't of Commerce's Third Remand Redetermination ("CAC's Supp. Cmts."), ECF No. 146.

Defendant United States ("the Government") filed comments in support of Commerce's decision.  Def.'s Resp. to Comments on the Third Remand Redetermination ("Gov't's Resp."), ECF No. 147.  Calgon Carbon also filed comments supporting Commerce's reliance on the Malaysian data to value coal tar and bituminous coal.  Def.-Ints.' Comments in Supp. of the Dep't of Commerce's Third Remand Redetermination ("Def.-Ints.' Supp. Cmts."), ECF No. 148.

For the following reasons, the court remands Commerce's surrogate value selection with respect to carbonized material.  The court sustains Commerce's reliance on Malaysian data to value coal tar and bituminous coal.

JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to § 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)(2012),[5] and 28 U.S.C. § 1581(c)(2012).

The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).  "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order."  *SolarWorld Ams., Inc. v. United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1314, 1317 (2017) (internal quotation marks and citation omitted).

DISCUSSION

An antidumping duty is "the amount by which the normal value exceeds the export price (or the constructed export price) for the merchandise."  19 U.S.C. § 1673.  When an antidumping duty proceeding involves a nonmarket economy country, Commerce determines normal value by valuing the factors of production[6] in a surrogate country, *see id*. § 1677b(c)(1), and those values are referred to as "surrogate values."  In selecting surrogate values, Commerce must use "the best available information" that is, "to the extent possible," from a market economy country or countries that are economically comparable to the nonmarket economy country and "significant producers of comparable merchandise."  *Id.* § 1677b(c)(1), (4).  In selecting its surrogate values,

---

[5] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and all references to the United States Code are to the 2012 edition, unless otherwise stated.

[6] The factors of production include but are not limited to: "(A) hours of labor required, (B) quantities of raw materials employed, (C) amounts of energy and other utilities consumed, and (D) representative capital cost, including depreciation."  19 U.S.C. § 1677b(c)(3).

Commerce generally prefers publicly-available, "non-proprietary information gathered from producers of identical or comparable merchandise in the surrogate country."  19 C.F.R. § 351.408(c)(1), (4).

The phrase "best available information" is not defined in the statute, consequently, Commerce has broad discretion to determine what value(s) satisfy that requirement.  *See, e.g.*, *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1323 (Fed. Cir. 2011).  In making its selection, Commerce is not required to duplicate the precise experience of the manufacturer in the non-market economy country, but instead must identify the surrogate value that "most accurately represents the fair market value" of the relevant factor of production.  *Nation Ford Chem. Co. v. United States*, 166 F.3d 1373, 1377 (citation and internal quotation marks omitted).

## I.  Carbonized Material

### A.  Commerce's Determination

Initially, Commerce found that "both Malaysia and the Philippines provide equally viable [surrogate values]."  Third Remand Redetermination at 11.  Commerce chose Malaysia as the primary surrogate country, in part, because it "offers the best available information to value Jacobi's . . . carbonized materials."  *Id.* at 12.  Commerce then explained that the Malaysian surrogate data for carbonized material are based on an import quantity (11.1 metric tons ("MT")), which is not a commercially significant amount.  *Id.* at 15.  Therefore, Commerce also states that it selected data from the Philippine industry publication *Cocommunity* to value Jacobi's carbonized material.  Third Remand Redetermination at 15–16; *see also* Commerce's Final Surrogate Values

for Third Remand Redetermination (June 17, 2019) ("Commerce's SV Mem.") at 2,

Attach. 1, PR 15–16, 3rd PJA Tab 11.

### B. Parties' Contentions

Calgon Carbon contends that Commerce's selection of the Philippine

*Cocommunity* data to value carbonized material is not supported by substantial

evidence because: (1) the Malaysian data is more representative of the type of

carbonized material that Jacobi's suppliers consume (*i.e.* coconut shell charcoal); (2)

Commerce did not adequately explain why the Malaysian import quantity is not

commercially significant; (3) citing *Luoyang Bearing Corp. (Grp.) v. United States*, 29

CIT 24, 358 F. Supp. 2d 1296 (2005), Commerce failed to consider whether the per-unit

value of the Malaysian imports of carbonized material substantially differs from the per-

unit values of carbonized material from larger-import-quantity countries; and (4) in

selecting the *Cocommunity* data as the surrogate value, Commerce failed to adequately

explain its deviation from its regulatory preference of selecting surrogate values from a

single country.  Def.-Ints.' Opp'n Cmts. at 5–15.

The Government contends that Commerce addressed whether the Malaysian

data are based on a commercially significant import quantity, having initially selected

Malaysian data in its Draft Third Remand Redetermination and then rejected the data in

its final results.  Gov't's Resp. at 15 (referencing Draft Results of Redetermination

Pursuant to Court Remand (May 7, 2019), PR 2, 3rd PJA Tab 10; Third Remand

Redetermination at 13–16).

**C. Commerce's Valuation of Carbonized Material Must Be Remanded for Clarification**

Commerce's surrogate value selection for carbonized material must be remanded for further explanation by the agency.  It is difficult to discern clearly the agency's reasoning as a result of internal inconsistencies evident on the face of the Third Remand Redetermination with respect to the surrogate value selected for carbonized material.

Specifically, in the main discussion regarding surrogate country selection, when evaluating data availability, Commerce explains that for carbonized materials, both Malaysia and the Philippines provide "*equally viable*" surrogate values for carbonized material.  Third Remand Redetermination at 11 (emphasis added).  After completing its review of data availability, Commerce concludes "that Malaysia offers the *best available* information to value Jacobi's FOPs, including carbonized material."  *Id*. at 12 (emphasis added).  Later in the document, when addressing the parties' arguments with respect to the surrogate value for carbonized material, Commerce states that the Malaysian surrogate data *is not reliable* (not "commercially significant"), *id.* at 15, and that it will use the Philippine *Cocommunity* data because it is *superior* ("based on a commercially significant quantity"), *id*. at 16.  These statements and conclusions are inconsistent with each other.

While it may well be that these differences are the result of inadequate attention to full implementation of changes made in the final results, it is for Commerce to resolve these issues in the first instance.  Moreover, requiring Commerce to reconcile these inconsistencies will allow the agency to address more fully Calgon Carbon's claims that

Commerce did not directly or fully analyze the commercial significance of the Malaysian import quantity[7] or account for Commerce's preference for selecting surrogate values from a single surrogate country, and address its argument based on *Luoyang Bearing*. *See* Def.-Ints.' Opp'n Cmts. at 5–15.

In light of the inconsistencies in the Third Remand Redetermination and the agency's limited reasoning, the court cannot adequately trace the path of the agency's reasoning in selecting the surrogate value for carbonized material.  *See NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009) ("[T]he path of Commerce's decision must be reasonably discernable to a reviewing court.").  Therefore, the court will remand Commerce's determination with respect to its surrogate value selection for carbonized material for further explanation, and, if necessary, reconsideration.

## II.  Coal Tar

### A.  Commerce's Determination

As the surrogate value for coal tar, Commerce selected Malaysia data with an average unit value ("AUV") of $749.51 per metric ton ("/MT").  *See* Third Remand Redetermination at 17–20.  In making its selection, Commerce evaluated whether the Malaysian coal tar data yielded an aberrational price.  Third Remand Redetermination

---

[7] The court notes that the Commerce determined that 11.1 MT of carbonized material is not a commercially significant amount because it "far less" than the amount of carbonized material the court "questioned" as commercially significant in *Jacobi (AR8) I*, 313 F. Supp. 3d at 1362.  *See* Third Remand Redetermination at 15.  However, the court came to no conclusion regarding the commercial significance of the Thai quantity of carbonized material, instead noting that Commerce failed to provide an adequate explanation for its finding that this quantity was commercially significant, *Jacobi (AR8) I*, 313 F. Supp. 3d at 1361–62.

at 18.  For benchmarking purposes, Commerce considered data from countries at the

same level of economic development, and data from comparable and non-comparable

countries.  *Id.* at 19.  Commerce also compared the Malaysian value to the average of

historical surrogate values for coal tar in previous reviews and to "export prices of

certain countries on the record."[8]  *Id*. at 18–19.  Commerce explained that the

Malaysian value is "less than two times more" than the historical average value for coal

tar and "between two to three times more" than the export prices and that these

differences do not establish that the Malaysian value is aberrant.  *Id.* at 19–20.

Commerce declined to rely on South African data for coal tar because South Africa "is

not a significant producer of activated carbon," and the Malaysian data were reliable.

*Id.* at 19–20.

## B.  Parties' Contentions

Before the court, Plaintiffs argue that the coal tar value is aberrational because it

is significantly higher than (1) the surrogate values for coal tar used in previous

segments of this review, and (2) the average coal tar price from the largest exporters of

tar coal.  Jacobi's Opp'n Cmts. at 2–5 (citing Jacobi's Surrogate Value Comments

(Sept. 24, 2015) at Exs. SV-4, PR 164, 174,-188, 3rd PJA Tab 2; Jacobi's Prelim. SV

Cmts. at Ex. SV2-1,); CAC Opp'n Cmts. at 2–5 (same).  Therefore, Plaintiffs contend,

---

[8] Those countries and corresponding values are: Austria: $241.41/MT; France: $335.35/MT; Germany: $548.82/MT; Poland: $300.38/MT; and Russia: $336.76/MT. Third Remand Redetermination at 19 & n.88 (citing Jacobi's Pre-Prelim. Surrogate Value Comments (Jan. 4, 2016) ("Jacobi's Prelim. SV Cmts.") at Ex. SV2-19, PR 282, 3rd PJA Tab 12).

Commerce should have selected the South African data as surrogate value.  Jacobi's

Opp'n Cmts. at 5; CAC's Opp'n Cmts. at 6.

The Government contends that Commerce sufficiently addressed Plaintiffs'

concerns regarding the coal tar value and provided a reasoned analysis for why the

Malaysian value is not aberrational.  Gov't Resp. at 5–10; *see also* Def.-Ints.' Supp.

Cmts. at 7–9.  The Government claims that a value may be aberrant if it is "many times

higher" than the average of the surrogate values of record, but that is not the case here.

Gov't Resp. at 6–7; *see also* Def.-Ints.' Supp. Cmts. at 7–8.  The Government argues

that Commerce appropriately rejected the South African surrogate value because South

Africa is not a significant producer of activated carbon and the agency had reliable data

from Malaysia.  Gov't Resp. at 10–11; *see also* Def.-Ints.' Supp. Cmts. at 9.

## C.  Substantial Evidence Supports Commerce's Coal Tar Surrogate Value Selection

The court will affirm Commerce's surrogate value selection for coal tar.  In

selecting the Malaysian data to value coal tar, Commerce provided a reasoned analysis,

considering historical values for coal tar used in previous reviews, historical Malaysian

values for coal tar, contemporaneous benchmarking data, and contemporaneous prices

from coal tar exporters.[9]  Third Remand Redetermination at 18–20.  Commerce

---

[9] Additionally, Jacobi's and CAC's argument that the coal tar value is aberrant based on comparisons with the export prices fails to consider that "economic comparability and, thus, the usefulness of proffered benchmarks, is a matter of degree."  *Jacobi (AR7) II*, 313 F. Supp. 3d at 1337 (citations omitted).  The GNIs of Germany ($47,640), France ($43,080), Poland ($13,730), and Russia ($13,210) were not at the same or a comparable level of economic development as China ($7,380) during the period of review.  *See* Third Remand Redetermination at 6; Jacobi's Comments on Economic Comparability (July 20, 2015) at Attach. C, PR 82, 3rd PJA Tab 1; *see generally* Req.

determined that these values, though noticeably lower than the Malaysian value, did not

require a finding that the Malaysian value was aberrant.  *Id.*  And while Plaintiffs argue

that Commerce's determination is flawed, they have not identified evidence that

Commerce did not consider[10] or an error in Commerce's reasoning.  Rather, Plaintiffs

merely disagree with the evidentiary weight Commerce assigned to the differences

between the Malaysian value and other values in the record.  "[I]t is not the court's place

to re-weigh the evidence or to suggest that another alternative was the only appropriate

choice."  *JMC Steel Grp. v. United States*, 38 CIT ___, ___, 24 F. Supp. 3d 1290, 1313

(2014) (citation omitted); *see also Nippon Steel Corp. v. United States*, 458 F.3d 1345,

1359 (Fed. Cir. 2006) ("[T]his court, reviewing under the substantial evidence standard,

must defer to the [Commerce].").

       Similarly, the court is not persuaded by Plaintiffs' argument that Commerce

should have selected the South African data for the surrogate value.  Plaintiffs do not

dispute that South Africa is not a significant producer of comparable merchandise.  *See*

Third Remand Redetermination at 9, 19.  All other things being equal, Commerce

---

for Economic Development, Surrogate Country and Surrogate Value Comments and
Information (Aug. 7, 2015) at Attach. 1, PR 104, 1st PJA Tab 20 (listing countries at the
same level of economic development as China, and not including Germany, France,
Poland, or Russia).

[10] While Commerce did not explicitly mention the individual historical surrogate values
for coal tar in previous reviews, Commerce compared the average of the historical
surrogate values to the Malaysian value.  Third Remand Redetermination at 19.
"[Commerce] need not address every piece of evidence presented by the parties;
absent a showing to the contrary, the court presumes that [Commerce] has considered
all of the record evidence."  *Siemens Energy, Inc. v. United States*, 38 CIT ___, ___,
992 F. Supp. 2d 1315, 1324 (2014), *aff'd*, 806 F.3d 1367 (Fed. Cir. 2015) (citation
omitted).

considers data from countries that are significant producers of comparable merchandise before considering data from a country that is not a significant producer.  *See* 19 U.S.C. § 1677b(c)(4)(B).  Thus, the court finds no error in Commerce's selection of Malaysian data to value coal tar and will sustain Commerce's determination on this issue.

## III.  Bituminous Coal

### A.  Commerce's Determination

As the surrogate value for bituminous coal, Commerce selected Malaysian data based on an import quantity of 381 MT.[11]  Third Remand Redetermination at 20; *see also* Malaysian SV Submission at Attach. Malaysia-1.  Before the agency, Jacobi alleged that the bituminous coal surrogate value was not based on a commercially significant import quantity.  Third Remand Redetermination at 20.  Commerce rejected this contention, stating that it was not obligated to duplicate Jacobi's exact production experience and that Jacobi had not provided evidence that the Malaysian import quantity is not commercially significant.  *Id*.  Commerce also declined to rely on Thai

---

[11] Commerce did not identify the import amount of bituminous coal underlying the Malaysian data, *see* Third Remand Redetermination at 20, but the record indicates that this amount is 381 MT, *see* Pet'rs' Submission of Malaysian Surrogate Values (Sept. 24, 2015) ("Malaysian SV Submission") at Attach. Malaysia-1, PR 215-17, 3rd PJA Tab 4 (providing Malaysian Global Trade Atlas data from Harmonized Tariff Schedule heading 270112, excluding imports from non-market economies and economies with widely available export subsidies).  The Parties assert, without explanation, that the Malaysian data for bituminous coal are based on an import quantity of 396 MT.  *See* Jacobi's Opp'n Cmts. at 5; CAC's Opp'n Cmts. at 6; Gov't's Resp. at 11–12; Def.-Ints.' Supp. Cmts. at 11.  The court will utilize the import quantity identified in the record and notes that the difference between the quantities (that is, 396 MT and 381 MT) is immaterial.

surrogate data for bituminous coal because Thailand is not a significant producer of

comparable merchandise.  *Id*.

## B. Parties' Contentions

Plaintiffs contend that the Malaysian value for bituminous coal is based on a

commercially insignificant import quantity.[12]  Jacobi's Opp'n Cmts. at 5–6; CAC's Opp'n

Cmts. at 6 (same).  Plaintiffs represent that Jacobi's suppliers purchased over 25,000

MT of bituminous coal during the POR,[13] an amount 63 times higher than the quantity

underlying the Malaysia surrogate value.  Jacobi's Opp'n Cmts. at 5–6; CAC's Opp'n

Cmts. at 7.  Plaintiffs assert that Commerce should have valued Jacobi's bituminous

coal using Thai data, even though the agency found that Thailand is not a significant

producer of comparable merchandise.  Jacobi's Opp'n Cmts. at 6–7; CAC's Opp'n at 8.

The Government asserts that substantial evidence supports Commerce's

selection of the Malaysian data for bituminous coal.  Gov't's Resp. at 12–14; *see also*

Def.-Ints.' Supp. Cmts. at 9–10.  The Government avers that merely comparing the

amount of bituminous coal Jacobi's suppliers consumed to the Malaysian import

quantity is insufficient to demonstrate that the quantity is not commercially significant.

Gov't's Resp. at 12–13; *see also* Def.-Ints.' Supp. Cmts. at 10–11.  The Government

---

[12] Jacobi asserts that the Malaysian surrogate value "is not a representative price in light of Jacobi's consumption."  Jacobi's Opp'n Cmts. at 6.  To the extent this suggests that the bituminous coal surrogate value is aberrational, Jacobi has not meaningfully developed this argument.  "It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."  *United States v. Great Am. Ins. Co. of New York*, 738 F.3d 1320, 1328 (Fed. Cir. 2013).

[13] The court previously noted that it is unclear to what extent NXHH's consumption of inputs is imputable to Jacobi.  *Jacobi (AR8) I*, 313 F. Supp. 3d at 1360 n.28.  Plaintiffs have not since clarified this issue.

argues that because the agency determined that Thailand is not a significant producer

of activated carbon, Commerce's rejection of Thai surrogate value of bituminous coal is

justified.  Gov't Resp. at 13–14; *see also* Def.-Ints.' Supp. Cmts. at 13.

### C. Substantial Evidence Supports Commerce's Selection of the Malaysian Data to Value Jacobi's Bituminous Coal

 Commerce's selection of Malaysian data to value bituminous coal is supported

by substantial evidence.  "[W]hile a surrogate value must be as representative of the

situation in the NME country as is feasible, Commerce need not duplicate the exact

production experience of the [Chinese] manufacturers at the expense of choosing a

surrogate value that most accurately represents the fair market value of [the factor] in a

[hypothetical] market-economy [China]."  *Nation Ford*, 166 F.3d at 1377 (alterations in

original except regarding "the factor") (citation and internal quotation marks omitted).

Plaintiffs are correct that there is a substantial difference between the Malaysian

import quantity and the amount of bituminous coal Jacobi consumes.  Jacobi's Opp'n

Cmts. at 5; CAC's Opp'n Cmts. at 7.  But Commerce considered this evidence,

acknowledged the quantitative difference, and was not persuaded that the difference

rendered the Malaysian value unusable.  Third Remand Redetermination at 18–20.

Plaintiffs have not identified any evidence that Commerce failed to consider or an error

in its reasoning; they merely disagree with Commerce's conclusion.  Thus, Plaintiffs'

argument amounts to little more than a plea for the court to reweigh the evidence.  This

the court will not do.  *Downhole Pipe & Equip., L.P. v. United States*, 776 F.3d 1369,

1376–77 (Fed. Cir. 2015) (explaining that the court's task is not to reweigh the

evidence).

Because the court finds no error in Commerce's selection of the Malaysian data to value bituminous coal, the court rejects Plaintiffs' argument that Commerce was obligated to rely on data from Thailand, which Commerce determined was not a significant producer of comparable merchandise.  Third Remand Redetermination at 6–7, 20; *see also Dorbest Ltd. v. United States, 604 F.3d 1363, 1372* (Fed. Cir. 2010) ("The governing statute requires Commerce to use, to the extent possible, data from countries that are 'significant producers of comparable merchandise.'" (quoting 19 U.S.C. § 1677b(c)(4)(B)).  Therefore, the court will sustain Commerce's selection of Malaysian data as the surrogate value for bituminous coal.

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Third Remand Redetermination is remanded to further address or reconsider its selection of the surrogate value for carbonized material in accordance with this opinion; it is further

**ORDERED** that Commerce's Third Remand Redetermination is otherwise sustained; it is further

**ORDERED** that Commerce shall file its fourth remand results on or before March 16, 2020; it is further

**ORDERED** that the deadlines provided in USCIT Rule 56.2(h) shall govern thereafter; and it is further

**ORDERED** that any opposition or supportive comments must not exceed 4,000 words.

/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated: December 17, 2019
         New York, New York